IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MATTHEW WILLIAMSON, | |
| PLAINTIFF, | CIVIL ACTION NO. |
| | 1:20-CV-00532-ELR |
| V. | |
| ACI WORLDWIDE, INC., | |
| DEFENDANT. | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

COMES NOW Plaintiff Matthew Williamson ("Williamson" or "Plaintiff"), and submits his First Amended Complaint, as a matter of course pursuant to Federal Rules of Civil Procedure Rule 15, showing this Court as follows:

**JURISDICTION AND VENUE**

1.

The Plaintiff is a resident of the State of Georgia and subjects himself to the jurisdiction and venue of this Court.

2.

The Defendant, ACI Worldwide Inc., (hereinafter ACI or Defendant) is a Nebraska Corporation that operates business worldwide and is subject to the Jurisdiction and Venue of this Court through its previous existing and ongoing business transactions that take place in this Court's jurisdiction. Further ACI Worldwide Inc., is registered to conduct business as a foreign corporation through

1

the Georgia Department of State. ACI Worldwide Inc., is registered with the Georgia Secretary of State under control number J922645.

3.

Defendant may be served with a copy of this Complaint and Summons through its Registered Agent: Corporation Services Company, located at 40 Technology Parkway South, #300, Norcross, GA 30092.

4.

This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. §1332 because this is a civil action between citizens of different states, and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

## STATEMENT OF FACTS

5.

Plaintiff incorporates the allegations contained in all previous paragraphs to this complaint as if contemporaneous stated herein

6.

Plaintiff is a very successful International Sales Executive who was previously employed by the Defendant. Defendant is a global payments processing company.

7.

Plaintiff worked as an International Sales Executive for Defendant beginning March 30, 2015.

8.

Defendant has complete control over the valuation of the contracts. Plaintiff has no control over the valuation of the contracts. Plaintiff has no control over the valuation of the contracts which he completes.

9.

On August 11, 2016 Plaintiff on behalf of Defendant completed a deal and executed a Master Service Agreement with a large corporation he was to be paid a commission on this deal based on his employment contract with the Defendant.

10.

The master contract of this deal provided that 50 percent of the contract value is guaranteed, and 50 percent was projected and not guaranteed.

11.

The Defendant pays its Sales Executives based on the total value of the contract which is what Plaintiff was paid out on according to his employment contract.

12.

As a result of his hard work and years of commitment and success, Plaintiff was awarded a promotion by Defendant in 2018.

13.

Plaintiff was promoted to a Team Lead position where he was responsible for managing a team of Sales Executives within Defendant.

14.

Plaintiff raised concerns that accepting the position would decrease his earnings as he already had deals set to finish which would allow Plaintiff to make a significant amount of money, Plaintiff was right to be concerned and lost out on a significant amount of money due to breach of contract on the part of the Defendant.

15.

Defendant advised Plaintiff that he would be a Player/Coach and would be entitled to 75 percent of his activity as an individual contributor with 25 percent being considered as a team manager.

16.

Plaintiff received his 2018 Sales Incentive Plan on January 20, 2018. It was incomplete as it had no numbers associated with target, compensation percentage or any details regarding his new role. The Sales Incentive Plan did imply that 75 percent of his activity would be considered as an individual contributor and 25 percent would be considered as a team manager but was otherwise insufficient.

17.

On January 20, 2018, Plaintiff was advised through email by an Agent of Defendant that he would not be granted access to the Sales Kickoff Event in San Diego until he signed the 2018 Sales Incentive Plan forcing him to sign an incomplete contract in order to attend a corporate event. In the same email Agent of Defendant admitted that it was embarrassing as a company how incomplete the document was.

18.

Plaintiff returned the executed agreement on January 21, 2018 with comments stating that the documents was unacceptable but that Plaintiff had signed in order to attend the Kickoff Event as he had already flown to San Diego for it showing Plaintiff was forced to sign the document by Defendant.

19.

On January 24, 2018, Plaintiff confirmed with Agent of Defendant that no revised documents had been provided.

20.

On January 31, 2018, Plaintiff raised further concerns over the new role and still not having a Sales Incentive Plan stating that he must be paid as an individual contributor and what his targets were as an individual contributor at 75 percent and for his role as a manager at 25 percent as was promised him by the Defendant.

21.

On March 2, 2018, Plaintiff received a revised 2018 Sales Incentive Plan with targets and percentage rates. The revised plan made no mention of the previously promised 75/25 split construct and only paid plaintiff as a manager contrary to the original offer and the assurances made by Defendant.

22.

On March 6, 2018, Plaintiff was forced to execute the revised plan under duress as he would not receive his commission for deals that were about to be executed if he did not sign.

23.

On March 29, 2018 the Defendant charged back $42,157.66 to the Plaintiff. Plaintiff received no prior notification of the charge back. Defendant committed a breach of contract through this act and took commissions that were rightfully Plaintiff's.

24.

The chargeback emerged from the previous deal Plaintiff had made on behalf of Defendant on August 11, 2016. Plaintiff was entitled to his full commission under his contract.

25.

The chargeback was taken out of compensation owed for a different deal which Plaintiff had completed on behalf of the company in December 2017.

26.

On April 10, 2018 Plaintiff had a meeting with the CIO of Defendant and discussed the team lead role and misalignment of his role and his compensation.

27.

In this meeting Plaintiff, showed three direct reports showing his individual efforts had totaled 75 percent of the total team target. He was instructed that the other 25 percent of the team target was expected to be signed by him as an individual contributor despite not having that construct in his Sales Incentive Plan. The CIO acknowledge that this was an oversight and would be addressed and corrected creating an implied contract which Defendant never followed through on.

28.

On May 10, 2018 Plaintiff had a meeting with the Global Head of Sales of the Defendant Regarding the chargeback amount and the team lead position which had him paying a charge back at a 1:4 ration based on the new compensation structure.

29.

The Global Head of Sales agreed that the team lead construct was not right given the chargeback situation and ensured there would be a review creating another implied contract between Defendant and Plaintiff that was never fulfilled.

30.

The subsequent review by the Defendant resulted in no change to the chargeback or the compensation plan in violation of the implied contracts formed.

31.

On June 12, 2018 Plaintiff executed another large contract. He was instructed to assign the deal to a direct report (a Sales Executive managed by the Plaintiff) because of his new position causing money he was entitled to based on his individual efforts be given to someone else.

32.

On or about August 15, 2018, Plaintiff was involved in the discussion and set up of another major deal in which Plaintiff helped resolve a major issue and prevented the loss of a major costumer with the Defendant. Plaintiff was assured that when the deal finalized the valuation would be done properly and not be backlogged creating an implied contract. The deal was backlogged in violation of that contract.

33.

On the same date Plaintiff was assured by an Agent of the Defendant that he would be receiving a promotion to a director position that would bring relief to the damages that had been caused by the previous failure of the Defendant creating another implied contract. This did not occur once again causing breach.

34.

On September 30, 2018 Plaintiff was charged back again in the amount of $65,731.97 which reduced his payment on his deal to $0.00. The charge back was still not properly explained to him at this time.

35.

On October 3, 2018, Plaintiff was informed by Defendant that he would not be promoted to a director position and that his current position was abrogated so he would be demoted back to an individual contributor effective January 1, 2019 in violation of the implied contract offered in order to make the Plaintiff whole for the earlier damages caused. The circumstance was not a result of the Plaintiff's performance but was explained as an issue with corporate construct.

36.

On October 6, 2018, Plaintiff executed another large deal valued at two million dollars. Plaintiff was again instructed to assign the deal to another employee of the Defendant.

37.

On November 30, 2018, the Plaintiff was charged back for a third time in the amount of $16,029.41.

38.

On December 18, 2018 Plaintiff was asked to close the deal valued at eleven million dollars by December 31, 2018. The deal was tracking to sign by February 2019 which would have allowed client to earn four times the compensation as an individual contributor. Despite the negative effect it would have on Plaintiff, he proceeded to have the contract signed by December 31, 2018.

39.

Defendant incentivized Plaintiff to close the deal by December 31, 2018 by stating that if he did he would be "kept whole" by Defendant with a one-off payment as if he was an individual contributor creating an implied contract. He was not paid or made whole in violation of the contract.

40.

On the same deal Defendant offered client a one-million-dollar discount off the deal price in exchange for a 2018 contract execution. Defendant ensured Plaintiff this would not affect the deal valuation. It did affect the valuation reducing it to a one-million-dollar deal after the contact had already been signed on December 31, 2018.

41.

On December 31, 2018 Plaintiff with his team closed the largest deal of the 2018 calendar year valued at $11,037,257.00.

42.

On January 30, 2019 Defendant revalued the deal at $4,091,197 with no justification of the decrease in valuation.

43.

On January 31, 2019, Plaintiff was charged back by Defendant for a fourth time in the amount of $22,082.00.

44.

On March 2, 2019, Plaintiff received a request to execute his revised Sales Incentive Plan which was received January 19, 2018. Plaintiff did not wish to sign as it was not in line with what was promised to him. He was told by Agents of Defendant that they would continue to fight for a fairer outcome this was not done and Plaintiff was again coerced into a bad deal.

45.

On March 8, 2019, Plaintiff had a call with agents of Defendant to review the Proposed Sales Incentive Plan. At this time the plan was signed as it was the only way Plaintiff could receive commissions which were due to him.

46.

On March 29, 2019, Plaintiff received his end of the month pay statement where he learned that a deal he was supposed to be paid $120,000.00 under his new Sales Incentive Plan would be reduced to $65,000.00. Again, no prior notification was provided.

47.

Meanwhile, a direct reporter who was on the deal was paid out the full $120,000.00 under his revised plan but the Plaintiff was not.

48.

On the same day Plaintiff learned that the Management by Objective portion of his compensation plan, which was 20 percent of his overall salary, had not been paid out. Again, this was done with no notification and in breach of his contract with Defendant.

49.

Defendant showed Plaintiff that his earning were being calculated with 100% of Management by Objective attainment but only paid him 75% of that portion of his compensation plan causing a breach of contract by the Defendant.

50.

On March 31, 2019 the Plaintiff was charged back by Defendant for a fifth time in the amount of $43,073.73.

51.

On April 9, 2019 an Agent of the Defendant referred to the situation they had placed the Plaintiff in as embarrassing and vowed to fix the situation by getting him paid what he was owed creating an implied contract, this never occurred. This was done to incentivize him to continue working so that Defendant could continue to benefit.

52.

On April 12, 2019 Plaintiff met with HR and Sales leadership to discuss the rejection of his revised compensation plan. Plaintiff was offered a one-time $80,000.00 bonus. Plaintiff rejected the proposal and demanded the full $120,000.00 he was promised by Defendant. Defendant paid Plaintiff the $80,000.00 despite his objection and refusal to accept this again was a breach of his contract.

53.

Plaintiff signed an additional add-on deal valued at $689,704.00 his pay out was to be $19,710.09 he did not receive any compensation from Defendant in breach of contract.

54.

On April 24, 2019, during a call with leadership Plaintiff was informed that he would be receiving no additional compensation for the deals in 2018 as the

situation was now "closed" despite his payments not being in line with his revised Sales Incentive Plan causing the Defendant to commit fraud due to the numerous promises made by Defendant throughout the process to resolve the issue so that he would continue working and the Defendant could continue to benefit from that work.

55.

On April 30, 2019, Plaintiff was improperly charged back for a sixth time in the amount of $113,150.00.

56.

On May 7, 2019, Plaintiff handed in his resignation and offered to finish out the month of May to ensure a smooth handover. This offer was accepted, and Plaintiff continued working for Defendant until May 31, 2019.

57.

On May 15, 2019, the Defendant took a portion of the base salary of the Plaintiff in the amount of $5,800.00. This is a breach of the terms of employment which did not allow for base salary to be garnished, placing Plaintiff and his family in financial hardship.

58.

On May 16, 2019, Plaintiff called leadership to get an explanation on why his base salary was garnished with no response.

59.

On May 18, 2019, Plaintiff received a call back from management who stated she was not given notice that the garnishment was going to occur and agreed it was wrong both ethically and operationally.

60.

Another offer was extended to Plaintiff by Defendant to try to make him whole by giving him half of the sales commission on a deal that was yet to be

signed. Plaintiff contributed extensively on the deal as a manager and his January 1, 2019 demotion precluded him from this commission.

61.

If the deal closed prior to May 31, 2019, Plaintiff would have received half the commission. The deal did not close until June and Plaintiff received nothing despite having played a critical role in the deal's success.

62.

The Sales representative on the deal received his full compensation and the other half went directly to the Defendant while the Plaintiff received nothing.

63.

On May 24, 2019, Plaintiff emailed Agent of Defendant advising him of the issue where other employees of Defendant had been paid under their revised 2018 Sales Incentive Plans but Defendant had refused to do so for Plaintiff.

64.

No response was received before Plaintiff's employment terminated with Defendant.

65.

On May 31, 2019, Defendant garnished Plaintiff's base salary and accrued vacation time of 71.7 hours, totaling $11,700.00 of garnished earnings. Again, no notice was given and a breach of contract was committed.

66.

Defendant refused and has failed to pay all monies owed to Plaintiff despite having paid him for all similar transactions during his years of employment.

67.

Over the course of the year and as a result of the refusal to pay all monies to Plaintiff as a result of the actions and failure of Defendant, Plaintiff lost out on at least $750,000.00 in lost commissions.

68.

Despite paying Plaintiff all monies due for years of committed service, Defendant stated to Plaintiff that they would make him whole for their mismanagement of his accounts and failed to ever do so.

69.

Defendant has intentionally converted Plaintiff's funds to its use and benefit. Defendant has stolen commissions Plaintiff was entitled to as a result of his efforts for Defendant in breach of contract.

70.

Defendant intentionally took commissions earned on deals completed by Plaintiff, reducing valuations of deals after they had already been completed and charging back deals that had already been paid out in breach of contract.

71.

Defendant also has breached its contract with Plaintiff by garnishing salary and vacation time in violation of the employment contract.

72.

Despite multiple requests, Defendant has also failed to provide Plaintiff with sufficient payment which is owed to him at this time.

73.

Plaintiff suffered significant financial loss as a result of Defendants' Breach of Contract.  To date, Defendant has failed to pay Plaintiff over $1,000,000.00 in commissions earned and promised.

74.

Defendant, through its Breach of Contract, has acted in Bad Faith towards Plaintiff. As a result, Plaintiff had to employ counsel to recover monies due to him, and is therefore entitled to reasonable Attorney's Fees.

## COUNT I

## BREACH OF CONTRACT

75.

Plaintiff restates the previous paragraphs as if stated herein.

76.

In Georgia, the Plaintiff can make a claim for breach of contract when there was a contract between the parties, there was a breach of that contract and as a result of that breach of contract there were damages.

77.

The Plaintiff and Defendant had a contract with him as an employee and the Defendant as an employer. In said contract there were provision that prevented the garnishment of the Plaintiff's Base Salary and Vacation time. In violation of this contract, the Defendant garnished these wages. This resulted in damages to the Plaintiff.

78.

The Defendant further breached the employment contract when the Defendant failed to pay the full percentage of the Plaintiff's Management by Objective portion of his compensation plan. This resulted in damages to the Plaintiff.

## COUNT II

## UNJUST ENRICHMENT IN THE ALTERNATIVE

79.

Plaintiff restates the previous paragraphs as if restated herein.

80.

In Georgia, a claim for unjust enrichment will lie if there is no legal contract and the party sought to be charged has been conferred a benefit by the party contending an unjust enrichment which the benefited party equitably ought to

return or compensate for. The concept of unjust enrichment in law is premised upon the principle that a party cannot induct, accept, or encourage another to furnish or render something of value to such party and avoid payment for the value received. See Jones v. White, 311 Ga. App. 822, 827-828(1)(b)(717 SE2d 322)(2011).

81.

Even if the Master Service Agreement is null and void, Plaintiff provided services to Defendant through which Defendant has benefited and Plaintiff ought to be compensated for.

82.

Plaintiff should be compensated for the unpaid commission owed to him in an amount to be determined at trial by a jury of his peers.

## COUNT III

## ATTORNEY'S FEES

83.

O.C.G.A. § 13-6-11 states that "the expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them."

84.

Plaintiff has asked Defendant several times to pay Plaintiff back all the monies rightfully owed.

85.

Defendant has promised to "make Plaintiff whole," yet has acted in bad faith by repeatedly failing to make good on its promises.

86.

Plaintiff has been forced to undergo unnecessary trouble and expense to recover the money owed to him, and now asks this Court to allow the award of his attorney's fees.

**WHEREFORE**, Plaintiff respectfully requests in the interest of justice and fairness that:

a) Defendant be served;
b) That Judgment be entered in favor of Plaintiff on all Counts;
c) That Judgement be entered for Plaintiff against Defendant with all available compensatory and general damages awarded to Plaintiff due to Defendant's breach of their contractual agreement; or
d) In the alternative, this Court find the Defendant was unjustly enriched by Plaintiff's labor and Plaintiff be made whole in the interest of fairness and equity;
e) That this Court notice this case for a trial by jury;
f) That this Court conduct a Trial by a Jury of 12 jury members; and
g) Plaintiff be granted such other and further relief as the Court deems just, equitable and proper.

Respectfully submitted this 19th day of February, 2020.

JAFFE FAMILY LAW, LLC

/s/Julio C. Perez-Bravo
Julio C. Perez-Bravo
Georgia Bar No. 737706
John Evans
Georgia Bar No. 4749075
julio@atlantatriallawyersgroup.com
john@atlantatriallawyersgroup.com
4062 Peachtree Street, Suite A666
Atlanta, Georgia 30319
(404) 434-2560 (Telephone)
(404) 549-8112 (Facsimile)
Attorneys for Plaintiff Matthew Williamson

## CERTIFICATE OF COMPLIANCE

I certify that to the best of my knowledge Plaintiff's First Amended Complaint complies with the type and format (including type and point size) selections as set forth in L.R. 5.1 and 7.1D, N.D. Ga. The font used to prepare this document is 14 Point Times New Roman and there are no more than ten (10) characters per inch.

Respectfully submitted this 19th day of February 2020.

JAFFE FAMILY LAW, LLC

/s/Julio C. Perez-Bravo
Julio C. Perez-Bravo
Georgia Bar No. 737706
julio@atlantatriallawyersgroup.com
4062 Peachtree Street, Suite A666
Atlanta, Georgia 30319
(404) 434-2560 (Telephone)
(404) 549-8112 (Facsimile)

Attorneys for Plaintiff Matthew Williamson

CERTIFICATE OF SERVICE

I, JULIO C. PEREZ-BRAVO, hereby certify that I have this day served Defendant ACI Worldwide Inc. this **"First Amended Complaint"** through this Court's Electronic Filing System and through electronic mail, addressed to Defendant's counsel of record:

    Gregory R. Crochet
    Kutak Rock LLP
    303 Peachtree Street, N.E.
    Suite 2750
    Atlanta, Georgia 30308
    Greg.crochet@kutakrock.com

This the 19th day of February 2020.

                                          /s/Julio C. Perez-Bravo
                                          Julio C. Perez-Bravo